UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VINCENT COOPER                                                              PLAINTIFF

V.                                            CIVIL ACTION NO. 3:19-CV-866-DPJ-FKB

THE TRAVELERS INDEMNITY                                                  DEFENDANTS
COMPANY AND BIRDSONG
CONSTRUCTION COMPANY,
INC.

ORDER

Plaintiff Vincent Cooper seeks remand in this removed case alleging bad faith denial and delay of workers' compensation benefits. Because the Court concludes that Cooper has no possibility of recovery against the non-diverse defendant, it denies Cooper's Motion to Remand [8].

I.      Facts and Procedural History

Cooper, a Mississippi resident, sustained an accidental occupational injury on September 19, 2016, while employed by Defendant Birdsong Construction Company, Inc. Birdsong carried workers' compensation coverage through Defendant The Travelers Indemnity Company. The day after the accident, Cooper notified Travelers that he had been injured, and Travelers initially denied his claim. Cooper then filed a claim for benefits with the Mississippi Workers' Compensation Commission. According to his Complaint, "the employer and carrier formally denied the claim," but then on July 5, 2017, "accepted compensability." Compl. [1-1] ¶ 22. After that, Defendants still "continued to deny substantial indemnity and necessary medical benefits without a legitimate arguable basis" "until ordered to [make payments] pursuant to an administrative order of the Mississippi Workers' Compensation Commission entered on December 4, 2017." *Id.* ¶¶ 24, 25.

Cooper sued Birdsong and Travelers in Hinds County Circuit Court on September 24, 2019, alleging claims for bad faith denial and delay of benefits, fraudulent inducement, fraudulent concealment, fraud and deceptive business practices, breach of fiduciary or quasi-fiduciary duties, breach of the requirement to deal with Plaintiff honestly, fairly, and in good faith, and gross negligence. *Id.* ¶ 31. Travelers, a non-resident of Mississippi, removed the case to this Court on November 25, 2019, asserting that Birdsong, a Mississippi corporation, was improperly joined and the Court has diversity jurisdiction under 28 U.S.C. § 1332. Cooper moved to remand, both Defendants responded in opposition, and Cooper timely filed a reply.

II.     Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal district court. District courts have diversity jurisdiction over civil actions between "citizens of different States."[1] 28 U.S.C. § 1332(a)(1). The diversity statute requires complete diversity between all named plaintiffs and all named defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). Accordingly, "[t]o remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied," including complete diversity. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). A district court may, however, "ignore[] a lack of complete diversity where the plaintiff joins a nondiverse defendant to avoid federal jurisdiction." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 n.14 (5th Cir. 2013).

This improper-joinder rule "is a narrow exception to the rule that diversity jurisdiction requires complete diversity." *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir.

---

[1] The separate amount-in-controversy requirement of the diversity statute is not disputed.

2003). To that end, "[t]he burden is on the removing party; and the burden of demonstrating improper joinder is a heavy one." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). Indeed, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).

The test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. To predict whether a plaintiff has a reasonable basis for recovery, a "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* When doing so, the federal version of Rule 12(b)(6) applies. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). Finally, in cases when "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," a "district court may, in its discretion pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

III.    Analysis

The dispositive question here is whether there is a reasonable possibility that Cooper can succeed on a claim against Birdsong, the non-diverse defendant. The thrust of Cooper's Complaint is that "Defendants" wrongfully denied and delayed payment on his claim for workers' compensation benefits. Compl. [1-1] ¶ 25. Cooper alleges that Birdsong's "role in the investigation was the guiding force behind the denial of [his] claim." *Id.* ¶ 19.

Ordinarily, under Mississippi law, "an insurance carrier, and not the employer, is liable for wrongfully-denied claims for workers' compensation . . . benefits." *Casey v. Rapad Drilling & Well Serv., Inc.*, No. 3:05-CV-98-HTW-JCS, 2006 WL 8439679, at *3 (S.D. Miss. Mar. 17, 2006). But where an employee can establish that his employer acted in bad faith, he also has a claim against the employer. *Luckett v. Mississippi Wood, Inc.*, 481 So. 2d 288, 290 (Miss. 1985); *accord Palmer v. Liberty Mut. Ins. Co.*, No. 2:10-CV-73-KS-MTP, 2010 WL 2773381, at *3 (S.D. Miss. July 13, 2010).

To "establish such a claim, the employee must prove that the employer intentionally refused to pay a claim that was due with reasonable promptness *and* that the employer had no reasonable or arguable basis for its refusal to pay the claim timely." *Palmer*, 2010 WL 2773381 at *4. The employee must prove "that the employer took some positive act—as opposed to a simple failure to act—that evidenced a conscious indifference to its consequences to the employee and which adversely affected the payment of the employee's claim." *Id.* at *6; *accord Null v. Zurich Am. Ins. Co.*, No. 2:06-CV-237-KS-MTP, 2007 WL 1826655, at *4 (S.D. Miss. June 22, 2007) ("[I]n order to find liability against an employer, independent acts of bad faith or affirmative allegations of an act in conspiracy with the carrier must be demonstrated."). Evidence of an employer merely "meddling" in the claims-handling process will not support a bad-faith claim. *Palmer v. Liberty Mut. Ins. Co.*, No. 2:10-CV-73-KS-MTP, 2011 WL 284495, at *6 (S.D. Miss. Jan. 25, 2011).

Starting with the Complaint, Cooper says the following about Birdsong's alleged wrongdoing:

- "Plaintiff's claim was denied at the outset due to the intentional actions of the employer which created an adversarial claims review process." Compl. [1-1] ¶ 15.

- "The employer initiated an internal investigation upon the occurrence that was intentionally designed to result in the denial of the claim to include the procurement of irrelevant, false and/or misleading information." *Id.* ¶ 16.

- "The employer provided the carrier with said irrelevant, false and/or misleading information that supported an erroneous finding that Plaintiff was not injured in the accident yet was feigning injury to obtain worker's compensation benefits." *Id.* ¶ 17.

- "The carrier . . . in essence, rubber stamped the employer's denial of the claim and in so doing, delegated its investigatory functions to the employer." *Id.* ¶ 18.

- "The employer's role in the investigation was the guiding force behind the denial of the Plaintiff's claim as there was no medical evidence whatsoever to support a finding that Plaintiff did not sustain a compensable injury secondary to the accident." *Id.* ¶ 19.

- "[T]he information provided by the employer was the product of a sham investigation that was designed and conducted to support a finding that Plaintiff did not sustain an on the job injury which resulted in the denial of Plaintiff's claim." *Id.* ¶ 20.

Defendants characterize these averments as speculative, conclusory, and "devoid of factual enhancement" that the Court may credit in a Rule 12(b)(6)-type analysis. Defs.' Resp. [10] at 14 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court tends to agree. For example, in *Iqbal*, the complaint alleged that petitioners "'knew of, condoned, and willfully and maliciously agreed to subject [Iqbal]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest[,' and] that Ashcroft was the 'principal architect' of this invidious policy." *Id.* at 680 (quoting complaint). The Supreme Court concluded that these "threadbare assertions" were "conclusory and not entitled to be assumed true." *Id.* at 681. Cooper's allegations are similar.

Even if Cooper's averments could nudge the Complaint past the point of plausibility, Defendants say the Court should pierce the pleadings because Cooper "has misstated or omitted discrete facts." *Smallwood*, 385 F.3d at 573. Cooper pushes back on that point, but the record supports Defendants' position. The Complaint states that Birdsong "initiated" an investigation and generated a "false" report of no injury; Travelers "rubberstamped" that conclusion thereby

5

"delegat[ing] its investigatory function"; and Birdsong was involved in the claims-handling process even after the worker's compensation proceedings concluded. *See* Compl. [1-1] ¶¶ 15–20, 24–25. The Complaint fails, however, to explain what exactly Birdsong provided Travelers, why it was provided, the particulars of the investigation Travelers conducted after Birdsong finished cooperating, or what Birdsong supposedly did after that. Those omissions trigger summary review under *Smallwood*. 385 F.3d at 573.

Defendants have submitted two affidavits to show Cooper has no viable claim against Birdsong. Specifically, Birdsong's office manager, Dana Saxton, submitted an affidavit detailing Birdsong's limited involvement in the investigation of Cooper's claim. To begin, she says Birdsong learned of Cooper's claim from Travelers. After Cooper contacted Travelers, a Travelers claims adjuster contacted Saxton on September 26, 2016. Saxton Aff. [2-1] ¶ 4. The adjuster asked Saxton to "obtain a written statement from Mr. Cooper's supervisor, who witnessed the incident, to document what he observed." *Id.* Saxton complied and sent Travelers a statement from Cooper's supervisor Robert Davis. *Id.* ¶ 5. In it, Davis reported that immediately after the accident, Cooper insisted several times that he was not injured. *Id.* at Ex. A. Saxton also sent Travelers "a 9-second video of Mr. Cooper taken by Birdsong's President, Jeff Cox, on or around September 26, 2016, which shows Mr. Cooper walking." *Id.* Saxton says she is not aware of Birdsong providing any "other documents or records to Travelers to assist in its investigation of Mr. Cooper's claim." *Id.* She believes that, thereafter, Travelers sent a field investigator to interview "Davis and one other Birdsong employee," who she believes "provided no written statements, and only reiterated what Mr. Davis stated in his written statement." *Id.* ¶ 6.

Misty Williams, a Travelers Investigative Claim Unit Manager, confirmed Saxton's account. She stated that "[u]pon receiving notice of Mr. Cooper's claim, Travelers initiated an investigation." Williams Aff. [9-1] ¶ 4. "As part of its investigation, Travelers requested that Birdsong send a witness statement from Mr. Cooper's supervisor Robert Davis," and Travelers thereafter "sent an investigator . . . to meet with and interview employees of Birdsong . . . with knowledge of the incident." *Id.* ¶¶ 5, 7. Significantly, Williams swore that "Travelers did not consult with Birdsong . . . about whether to deny the claim at any time," and, in fact, Travelers notified Cooper's attorney "of the initial denial before telling Birdsong." *Id.* ¶ 9.

Faced with this record, Cooper's reply initially returns to the conclusory assertions in his Complaint, describing Birdsong's "investigation" as a "sham" and asserting that it was the "guiding force" behind Travelers' decision to deny his claim. Reply [12] at 1 (quoting Complaint). But as noted above, the Court cannot assume the truth of those mere assertions and conclusions. Even if it could, Defendants' sworn affidavits flatly contradict them.

Cooper also attempts to create a record, citing various documents that were generated after Birdsong provided the initial information to Travelers. He attaches six exhibits: two emails from Travelers; two sets of medical records; his response to Travelers' interrogatories; and a Notice of Controversion that he says Travelers filed in his worker's compensation case. *See* Reply [12], Exhs. 1–6; *see also id.* at 7 (citing Notice of Controversion [12-6]).

These exhibits fail to create a fact question regarding Saxton's sworn statement that Birdsong was not involved in handling the claim or anything else after its initial cooperation with Travelers' investigation. *See* Saxton Aff. [2-1] ¶ 4. And significantly, none of Cooper's exhibits rebut what Birdsong told Travelers. Indeed, Cooper never disputes telling Davis he was unhurt, and he never denies that he was walking normally shortly after the accident. If those assertions

7

were untrue, then he could have easily submitted his own affidavit creating a fact question under summary review.

Aside from the record evidence, Cooper offers a few final arguments. First, he says his supervisor, Davis, failed to report the injury to Birdsong, which therefore did not report the injury to Travelers. Reply [12] at 3. But according to Davis's unrebutted statement, Cooper told him he was not injured in the accident. *See* Saxton Aff. [2-1] at Ex. A. Regardless, Cooper's claim was not declined for lack of notice; his attorney notified Travelers of the potential claim the day after the accident.

Cooper also faults Birdsong for "lying in wait and taking a video that purportedly '. . . appears to show the Claimant walking through [an] event with no particular problems . . .'." Reply [12] at 5 (quoting May 4, 2017 E-mail [12-4]). But Birdsong had a contractual duty to cooperate with Travelers' investigation, and Cooper has not shown that obtaining or using surveillance video of a workers' compensation claimant involves bad faith. *See Bis Salamis, Inc. v. Dir., Office of Workers' Comp. Programs*, 819 F.3d 116, 122 (5th Cir. 2016) (discussing use of employer-captured surveillance of workers' compensation claimant); *Chestnut v. Dairy Fresh Corp.*, 966 So. 2d 868, 871 (Miss. Ct. App. 2007) ("After viewing the surveillance video depicting Chestnut changing a flat tire and picking up a child, both of Chestnut's physicians opined that Chestnut had reached maximum medical improvement."). He likewise never rebuts that the video in fact showed him walking.

In short, none of the evidence Cooper points to suggests that Birdsong acted without a "reasonable or arguable basis." *Palmer*, 2010 WL 2773381, at *4. Nor is there evidence of bad faith conduct by Birdsong. Instead, Defendants have met their burden to show there is no reasonable basis to predict that Cooper may be able to recover on his claim against Birdsong.

Birdsong is improperly joined, the claims against it will be dismissed, and the Court has subject-matter jurisdiction.

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, the claims against Birdsong are dismissed, and Cooper's Motion to Remand [8] is denied.

**SO ORDERED AND ADJUDGED** this the 3rd day of April, 2020.

                                              s/ *Daniel P. Jordan III*
                                              CHIEF UNITED STATES DISTRICT JUDGE